**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOYCE TOTH, an individual, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:23-cv-11043-RGS |
| vs. | ) | |
| | ) | |
| EVERLY WELL, INC. and EVERLY | ) | |
| HEALTH, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS EVERLY WELL, INC. AND
EVERLY HEALTH, INC.'S MOTION TO COMPEL ARBITRATION OR
ALTERNATIVELY TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ..................................................................................................2

    A. Everlywell's Terms and Conditions........................................................2

    B. Plaintiff's agreement to Everlywell's Terms and Conditions.................5

    C. Plaintiff's Complaint..............................................................................6

III. ARGUMENT .....................................................................................................6

    A. Plaintiff must arbitrate her claims........................................................6

        1. The Parties entered into a valid agreement to arbitrate...............7

        2. The Parties have delegated questions of arbitrability to the
           arbitrator and Toth's claims fall within the Agreement in any
           event. ........................................................................................10

           a. The Agreement sets forth clear and unmistakable intent
              to delegate questions of arbitrability to the arbitrator. ..................10

           b. All of Toth's claims fall within the Agreement's
              arbitration provision..................................................................11

        3. The Court should exercise its discretion to dismiss the
           Complaint because all of Plaintiff's claims are subject to
           arbitration. ................................................................................13

    B. Alternatively, the Court should dismiss Plaintiff's meritless claims....................13

        1. Plaintiff waived the right to bring a class action and the Court
           therefore lacks subject matter jurisdiction. .................................13

        2. Plaintiff lacks standing because she does not allege any injury. ..............14

        3. Plaintiff lacks standing to assert claims under the Consumer
           Protection Acts of other states. ..................................................17

        4. Toth's claim for Unjust Enrichment fails because she has an
           adequate remedy at law.............................................................19

        5. Plaintiff's Chapter 93A claims fail because no reasonable
           consumer could be misled by Everlywell's advertising. .........................20

      6.     Toth's remaining claims fail because she has not alleged any misleading misrepresentation..................................................................24

IV.    CONCLUSION.............................................................................................................25

## I.      INTRODUCTION

Plaintiff Joyce Toth ("Toth") received exactly what she paid for when she bought an Everlywell Food Sensitivity Test.[1] And, in doing so, she also agreed to arbitrate any claims related to the test per an arbitration agreement that a court has already found enforceable.

The packaging for Everlywell's Food Sensitivity Test clearly states that the test measures IgG reactivity to 96 foods. Toth does not argue that the test failed to provide an accurate measure of her IgG levels.  Instead, Toth points to a series of undisputedly accurate Everlywell statements to somehow claim that Everlywell is "duping" its customers. For example, Toth claims that Everlywell "advertises to consumers that they can use their 'physician approved', 'CLIA-certified' Tests to determine their [IgG] Antibody Reactivity to different foods." Compl. ¶4. But Toth does not—and cannot—assert that these claims are false. Everlywell's tests *are* "physician approved," the labs providing results *are* "CLIA-certified," and the test *does* measure IgG reactivity, and Toth does not allege otherwise. Rather, Toth points to a handful of cherry-picked articles by allergist associations that doubt the usefulness of IgG testing. Were this case to proceed, the Court would learn that Toth's one-sided presentation of the research on IgG testing is itself highly misleading. But the case should not move forward at all, as Toth has failed to point to any actionable false or misleading statement by Everlywell.

Putting aside the meritless nature of Toth's claims, this case should not proceed in this Court for an additional—and threshold—reason: Toth has agreed to arbitrate her claims. When Toth created an account with Everlywell to register her Test Kit, she checked a box affirmatively acknowledging that she read and accepted Everlywell's "Terms and Conditions." The words Terms and Conditions hyperlinked to a User Agreement clearly stating that any disputes between

---

[1] Defendant Everly Well, Inc., is the seller of the test and a subsidiary of Defendant Everly Health, Inc. (collectively, "Everlywell").

the consumer and Everlywell would be subject to binding arbitration in Austin, Texas. A court has already enforced this arbitration provision in a similar case.[2] The result here should be no different.

As already noted, Toth's Complaint fails on the merits due to the absence of any false or misleading statements by Everlywell—and this is only one of the reasons the Court should dismiss Toth's Complaint should it decline to compel arbitration.  Dismissal is appropriate for at least four additional reasons: ***First***, Toth waived the right bring a class action when she signed the User Agreement, dooming her class action claims and depriving this Court of the sole pleaded basis for federal jurisdiction. ***Second***, Toth lacks both Constitutional and statutory standing to assert her own claims because she has not alleged any injury arising from Everlywell's supposed misrepresentations, nor does she face prospective harm from those representations as needed to seek injunctive relief. ***Third***, Toth lacks standing to assert claims on behalf of absent class members under other states' consumer protection laws, and the variation between state laws would warrant striking her nationwide class claim in any event. ***Fourth***, Toth's claim for unjust enrichment fails for the additional reason that she has an adequate remedy at law. Accordingly, the Court should refer this matter to arbitration and dismiss the Complaint.  Should the Court retain jurisdiction, it should nevertheless dismiss Toth's Complaint.

## II.     BACKGROUND

### A.     Everlywell's Terms and Conditions.

Everlywell is a leading digital healthcare company providing home health tests, including a Food Sensitivity Test that measures a user's immunoglobulin G (IgG) response to 96 foods and a Food Sensitivity Comprehensive Test that measures IgG response to 204 foods. Compl. ¶¶15,

---

[2] *See* Order Granting Def.'s Motion to Compel Arbitration, *Robinson v. Everly Well, Inc.*, Case No. 2020-014253-CA-01 (Fla. Cir. Ct. Miami-Dade Cty. Jan. 9, 2021) (Peaslee Ex. F). Exhibits A through E are attached to the Lusenhop Affidavit, Exhibits F and G are attached to the Peaslee Affidavit, and Exhibits 1 and 2 are attached to the Herber Affidavit, all filed with this motion.

19, 45. Consumers can purchase Everlywell's Food Sensitivity Tests directly from Everlywell's website or from third-party retailers. *Id.* ¶107(c). Regardless of how a consumer obtains the test, the test packaging states in bolded text on the outside of the box that "**Purchase, registration, and use are subject to agreeing to the Everlywell User Agreement, which can be read at everlywell.com/terms**." Herber Affidavit ("Herber") ¶5. This text has appeared on the test packaging since long before July 2022. *Id.*

Prior to using a test, consumers must register their test kit. Compl. ¶73; Lusenhop Affidavit ("Lusenhop") ¶5. This requires the user to create an account and check a box stating "I have read and accept the Terms and Conditions." Lusenhop ¶5; *see* Compl. ¶73. The text "Terms and Conditions" is hyperlinked in green, which is a different color from the surrounding text. Lusenhop ¶¶5–6.

When customers click on the green hyperlink, a User Agreement ("Agreement") opens in a separate tab so the consumer can read it without navigating away from the account creation page. *Id*. ¶6. Everlywell's website does not allow a user to create an account and register a test kit unless the user acknowledges that they read and accepted the Terms and Conditions. *Id*. ¶5.

The very first paragraph of the Agreement states that "By clicking on the box, you indicate that this User Agreement ("Agreement") is a binding agreement between you as the person who has created your user account (referred to as "you" or "your") and Everly Well, Inc. (referred to as "Everlywell", "we", "us", or "our") and that you have read and understood the following terms, including those in our Privacy Policy (https://www.everlywell.com/privacy-policy), Consent for Services (https://www.everlywell.com/product-consent/) and Terms of Use (https://www.everlywell.com/terms-of-use/). *Id*. ¶7 & Ex. A. The Agreement further states:

> **Dispute Resolution.** In the event of any dispute, claim, question or disagreement arising from or relating to this User Agreement or the purchase, registration, or use of any Everlywell product or Services, we and you (collectively, the "Parties") shall use their best efforts to settle the dispute, claim, question, or disagreement. . . . If the Parties do not reach such solution within a period of thirty (30) days, then all disputes shall be resolved by binding arbitration in Austin, Texas, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"), subject to the limitations of this section. This agreement to arbitrate will be specifically enforceable under the prevailing law of any court having jurisdiction. . . . The Parties agree that the arbitrator shall have sole authority to decide whether claims brought by either party (excluding claims brought under Section 21 below) are subject to this dispute resolution agreement. The decision of the arbitrator shall be made in writing, shall be final, judgment may be entered upon it in any court having jurisdiction thereof, and the decision shall not be subject to vacation, modification or appeal, except to the extent permitted by sections 10 and 11 of the Federal Arbitration Act, the terms of which sections the Parties agree shall apply. The fees charges by the AAA and arbitrator shall be shared equally by the parties.

*Id*. ¶7 & Ex. A, p.6. The only subsequent carve-out to arbitration contained in the Agreement is limited to intellectual property and preliminary injunction claims and thus does not apply here. *See* Ex. A, p.7 ("Preliminary Equitable Relief and Intellectual Property Claim."). The Agreement

additionally contains a subsection labeled "Class Action Waiver," which states,

> Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis. Neither you nor we will seek to have any dispute heard as a collective or class action or in any other proceeding in which either party acts or proposes to act in a representative capacity, and each party hereby waives any right to assert consolidated claims with respect to any disputes subject to arbitration under the User Agreement. No arbitration or proceeding will be combined with another without the prior written consent of all parties to all affected arbitrations or proceedings.

Ex. A, p.7. The Agreement states, under the heading "Governing Law," that "All disputes arising out of or relating to the User Agreement shall be governed by Texas law." *Id.*, p.6.

Both the "Consent for Services" and "Terms of Use" linked in the first paragraph of the Agreement contain Dispute Resolution, Class Action Waiver, and Governing Law provisions that mirror those in the Agreement. *Id.* ¶¶9–10; Ex. C, pp.5–6; Ex. D, pp.6–7.

If a consumer decides not to register their test kit, Everlywell issues refunds for tests purchased directly from Everlywell.  *See* Lusenhop ¶¶14–15 & Ex. E. Toth's allegation that the "Kits are unreturnable" and thus consumers "are unable to get their money back" is false: she quotes the portion of Everlywell's refund policy that explains that Everlywell does not accept returned test kits, and that consumers seeking a refund should therefore not mail the kit back to Everlywell. Compl. ¶72. But this is limited to the return of the physical kit—the policy clearly states that consumers can still receive a ***monetary*** refund for that unreturned kit within 30 days of purchase. *See* Ex. E. As that page also explains, test kits purchased from third-party retailers are subject to that retailer's refund policies. *Id.* As relevant to Toth, Target's website provided that Everlywell Food Sensitivity Tests could be "returned to any Target store or Target.com" within 90 days of purchase. Peaslee Affidavit ("Peaslee") ¶3 & Ex. G.

## B.      Plaintiff's agreement to Everlywell's Terms and Conditions.

Plaintiff alleges that she purchased Everlywell's Food Sensitivity Test from Target's

website in July 2022. Compl. ¶9.  At that time, Everlywell's User Agreement contained the Dispute Resolution, Class Action Waiver, and Governing Law provisions set forth above. Lusenhop ¶¶4, 6–7. It is undisputed that Toth clicked a checkbox accepting Everlywell's Terms and Conditions on July 31, 2022, when she created her account. *See* Compl. ¶¶73, 83–85; Lusenhop ¶¶3, 5.

### C.   Plaintiff's Complaint.

Despite her express agreement that she will not "seek to have any dispute heard as a class action" and will only bring claims in individual arbitration, Plaintiff filed her putative class action complaint against Everlywell on May 10, 2023, seeking to represent a class of "[a]ll individuals who purchased an Everlywell Food Sensitivity Test Kit for personal, family, or household use within the applicable statute of limitations, except for those who purchased the Test in the state of Texas," as well as a subclass composed of "Class Members who purchased the Test in the state of Massachusetts." Compl. ¶90.

Toth alleges that Everlywell made material misrepresentations regarding its Food Sensitivity Tests and that these supposed misrepresentations give rise to a claim for violation of Massachusetts General Laws Ch. 93A and the Consumer Protection Acts of 48 States. Compl. ¶¶102–113. She further asserts a quasi-contract claim for restitution on behalf of both the multistate class and Massachusetts subclass, *id*. ¶¶114–19, and two claims, Common Law Fraud and Negligent Misrepresentation, solely on behalf of the Massachusetts subclass. *Id*. ¶¶120–131.

## III.   ARGUMENT

### A.   Plaintiff must arbitrate her claims.

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate contained within "a contract evidencing a transaction involving commerce…shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. That is why "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp*., 460 U.S. 1, 24 (1983). Indeed, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. at 24–25.

To succeed on a motion to compel arbitration, a party must show "(1) that a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope." *Moore v. Squibb*, No. CV 23-10018-RGS, 2023 WL 2563646, at *2 (D. Mass. Mar. 17, 2023) (quoting *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 36 (1st Cir. 2017)). However, while the threshold question of contract formation is for the court, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The First Circuit reviews motions to compel arbitration under the FAA pursuant to the summary judgment standard. *Moore*, 2023 WL 2563646, at *2. Accordingly, "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Soto v. State Indus. Prods., Inc*., 642 F.3d 67, 72 n.2 (1st Cir. 2011) (citation omitted).

### 1.      The Parties entered into a valid agreement to arbitrate.

While the FAA governs valid arbitration agreements in commercial contracts, arbitration is "a creature of contract" and thus "principles of state contract law control the determination of whether a valid agreement to arbitrate exists" in the first instance. *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (citation omitted). In Massachusetts, the essential elements for formation of a contract are an offer, acceptance, and an exchange of

consideration or meeting of the minds. *McCormick v. Lischynsky*, 539 F. Supp. 3d 225, 236 (D. Mass. 2021).[3]

As this Court has noted, "online agreements [such as the one here]—where a user selects 'I agree' without necessarily reviewing the contract—are typically called 'clickwrap' agreements, and are generally held enforceable." *Wickberg v. Lyft, Inc*., 356 F. Supp. 3d 179, 183 (D. Mass. 2018) (collecting cases). The Massachusetts Supreme Court agrees: "'clickwrap' agreements, where user[s] 'expressly and affirmatively manifests assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions,' 'are regularly enforced.'" *Archer v. Grubhub, Inc.*, 490 Mass. 352, 361 (2022) (quoting *Kauders v. Uber Techs., Inc.,* 486 Mass. 557, 574 (2021) and collecting cases); *see Emmanuel v. Handy Techs., Inc*., 442 F. Supp. 3d 385, 393 (D. Mass. 2020), *aff'd,* 992 F.3d 1 (1st Cir. 2021); *Eubanks v. Gasbuddy, LLC*, 2022 WL 16963807, at \*4 (D. Mass. Nov. 16, 2022) ("Massachusetts courts 'routinely conclude' that clickwrap agreements are enforceable and 'reasonably communicate' an agreement's terms." (citation and alterations omitted)); *Small Justice LLC v. Xcentric Ventures LLC*, 99 F. Supp. 3d 190, 196 (D. Mass. 2015), *aff'd*, 873 F.3d 313 (1st Cir. 2017) ("Clickwrap agreements are generally upheld because they require affirmative action on the part of the user.").

Everlywell offers at-home test kits and processing services to customers in exchange for payment and the acceptance of certain written terms. When Plaintiff created an account to register her test kit, she was required to affirmatively manifest her acceptance of those terms by checking a box confirming that she "read and accept[ed] the Terms and Conditions." Lusenhop ¶5; Compl.

---

[3] Plaintiff is a Massachusetts resident, and Defendants are Delaware corporations with a principal place of business in Texas. Compl. ¶¶9–10.  Everlywell applies Massachusetts law to the threshold issue of validity, as there is no indication that the laws of these states materially differ on the question of contract formation so as to require a choice of law analysis.

¶73. The words "Terms and Conditions" appear as a conspicuously colored hyperlink, providing Plaintiff convenient access to the Terms and Conditions without requiring her to navigate away from the registration page. Lusenhop ¶¶5–6.

The first paragraph of the User Agreement clearly stated that "b[y] clicking on the box, you indicate that this User Agreement ('Agreement') is a binding agreement between you … and Everly Well, Inc. … and that you have read and understood the following terms, including those in our … Terms of Use (https://www.everlywell.com/terms-of-use/)." Lusenhop ¶7 & Ex A. The Agreement proceeded to identify the consideration exchanged: Everlywell's "laboratory testing kits" and "the results of the laboratory tests performed on the biological samples" in exchange for Toth's "compliance with the terms of this User Agreement, including timely payment of all fees." *Id*. The Agreement then set forth other provisions, including a term expressly providing that "all disputes shall be resolved by binding arbitration in Austin, Texas, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the 'AAA')." *Id*.

Another court has enforced Everlywell's arbitration agreement where, as here, the plaintiff purchased the test from Target and subsequently agreed to the User Agreement as part of the post-purchase account creation and test registration process. *See Robinson*, Case No. 2020-014253-CA-01 at p.5 (Peaslee Ex. F). Applying Massachusetts law compels the same result. *See, e.g.*, *Archer*, 490 Mass. at 361–62; *Wickberg*, 356 F. Supp. 3d at 183–84.

The principles governing enforceability of online clickwrap agreements are no different from those of ordinary contract formation: "[F]or there to be an enforceable contract, there must be both reasonable notice of the terms and a reasonable manifestation of assent to those terms." *Archer*, 490 Mass. at 361 (citation omitted). "Reasonable notice of a contract's terms exists even if the party did not actually view the agreement, so long as the party had an adequate opportunity

to do so." *Id*. Furthermore, "[s]o long as the party is required to make some indication of assent, such as selecting 'I agree' or 'I accept,' the fact that the party chooses not to read the agreement does not render it unenforceable." *Id*. at 362.

Everlywell's clickwrap agreement provided clear notice of its terms. The font size linking to the terms and conditions is the same as the remainder of text of the page, the hyperlink is green— the same as the "Log in" hyperlink on the page and distinct from the other language on the page— and Toth could not proceed without acknowledging those Terms and Conditions by clicking on the checkbox. Lusenhop ¶¶5–6. When Toth clicked the colored Terms and Conditions link, a screen displaying the words "User Agreement" in large font would have opened, and the very first sentence of the Agreement on that screen explained that by clicking the box, Toth was accepting a binding contract. *Id*. ¶6 & Ex. A. Whether Toth chose to review the Agreement is irrelevant in light of her opportunity to do so. *Archer*, 490 Mass. at 361; *Eubanks*, 2022 WL 16963807, at *4. Accordingly, Plaintiff and Everlywell entered into a valid agreement to arbitrate and this Court must enforce the terms of that agreement.

> **2.    The Parties have delegated questions of arbitrability to the arbitrator and Toth's claims fall within the Agreement in any event.**

Parties may delegate "whether their arbitration agreement applies to the particular dispute" to the arbitrator. *Henry Schein*, 139 S. Ct. at 527. Indeed, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* at 529. That is the case here. And even were it not, Toth's claims fall squarely within the arbitration agreement.

> **a.    The Agreement sets forth clear and unmistakable intent to delegate questions of arbitrability to the arbitrator.**

Delegation of arbitrability questions requires contract language evidencing a "clear and unmistakable" intent to do so. *Bossé v. New York Life Ins. Co.*, 992 F.3d 20, 27–28 (1st Cir. 2021).

Here, the Agreement expressly states that "The Parties agree that the arbitrator shall have sole authority to decide whether claims brought by either party (excluding claims brought under Section 21 below) are subject to this dispute resolution agreement." Lusenhop ¶7 & Ex. A, p.6.  None of Toth's claims fall under the section below, which is limited to intellectual property rights and temporary or preliminary injunctive relief.  Ex. A, p.7; *see also* Ex. D, p.6 (Terms of Use Dispute Resolution provision stating "The Parties agree that the arbitrator shall have sole authority to decide whether claims brought by either party (excluding claims brought under the following paragraph regarding intellectual property and preliminary equitable relief claims) are subject to this dispute resolution agreement.").

Were that not enough, the parties agreed that disputes would be resolved "in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the 'AAA')." Ex. A, p.6. The First Circuit "is clear that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator." *Bossé*, 992 F.3d at 29 (citing *Awuah v. Coverall N. Am., Inc*., 554 F.3d 7, 11–12 (1st Cir. 2009); *see Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (collecting cases). Massachusetts courts have reached the same conclusion. *See, e.g., LMH-Lane Cabot Yard Joint Venture v. Mass. Elec. Constr. Co*., 2021 WL 5630885, at \*8–9 (Mass. Super. Sept. 22, 2021). Thus, both through the Agreement's direct language and incorporation of the AAA's Commercial Rules, the parties have delegated the authority to determine arbitrability to the arbitrator.

      **b.**    **All of Toth's claims fall within the Agreement's arbitration provision.**

While it is not for this Court to consider whether Toth's claims fall within the scope of the parties' arbitration agreement, they plainly do. "Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Drywall Sys., Inc. v. ZVI Const. Co.*, 435 Mass. 664, 666 (2002) (citation and alterations omitted). Courts have consistently held that arbitration clauses, such as the one at issue here, that use "arising" or "relating to" language are read broadly. *See, e.g., id.* at 665–67 (arbitration provision covering "[a]ny controversy or claim ... arising out of or related to this [s]ubcontract" applied broadly and included claims under Ch. 93A); *Paquette v. McDermott Inv. Servs.*, 2014 WL 5313945, at *6 (D. Mass. Oct. 17, 2014) ("The use of phrases such as 'arising under' or 'arising out of' in an arbitration provision generally indicates an intent to arbitrate a broad scope of claims." (collecting cases)).

The "Dispute Resolution" provision of the parties' Agreement at issue here applies to "any dispute, claim, question or disagreement arising from or relating to this User Agreement or the purchase, registration, or use of any Everlywell product or Services." Ex. A, p.6. As stated at the outset of the Agreement, the Agreement governs the relationship between Everlywell and users, including the terms of purchase, site use, and the test services at issue here. The Agreement also states in the first paragraph that agreeing to the Agreement includes agreement to Everlywell's hyperlinked Privacy Policy, and contains a subsequent paragraph stating:

> **Use of Member Information.** We will maintain and use your information according to our Privacy Policy, located at https://www.everlywell.com/privacy-policy , which is incorporated by reference into this User Agreement, and which may be modified from time to time in our discretion. Your continued use of the Site or the Service indicates that you accept such modifications.

*Id.*, p.4. *See also* Lusenhop ¶8 & Ex. B.

Plainly, Toth's claims "arise from" and "relate to" the Agreement. Toth's entire claim centers on the merits of the testing services described in the Agreement and her assertion that she failed to get the "benefit-of-the-bargain" with respect to them. Compl. ¶87. And her claim that the Privacy Policy—which was prominently hyperlinked in multiple places in the Agreement and on

the website—was somehow hidden from her plainly arises from or relates to that Agreement, which incorporates the Privacy Policy by reference. Even if the Court found this to be a close question (it isn't), the well-established presumption in favor of arbitrability, the broad scope given to similar arbitration clauses, and the federal principle dictating that any ambiguity as to arbitrability should be resolved in favor of arbitration, require that this dispute be arbitrated.

### 3. The Court should exercise its discretion to dismiss the Complaint because all of Plaintiff's claims are subject to arbitration.

Where, as here, a party to an arbitration agreement brings a civil action that is subject to arbitration, the FAA requires the Court to stay the action pending resolution of the arbitration proceedings if the Complaint remains pending. *See* 9 U.S.C. § 3. However, "[w]here one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if *all* claims asserted in the case are found arbitrable." *Next Step Med. Co. v. Johnson & Johnson Internat'l*, 619 F.3d 67, 71 (1st Cir. 2010). Because all of Toth's claims are subject to arbitration, this Court should compel arbitration and dismiss this action.

### B. Alternatively, the Court should dismiss Plaintiff's meritless claims.

### 1. Plaintiff waived the right to bring a class action and the Court therefore lacks subject matter jurisdiction.

In addition to agreeing to arbitrate her claims, Toth also expressly waived the right to bring a class action when she entered into the Agreement with Everlywell. Specifically, the Agreement states, under the heading "Class Action Waiver," that "Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis" and that neither party "will seek to have any dispute heard as a collective or class action…" *See* Ex. A, p.7. Yet Toth's sole pleaded basis for this Court's subject-matter jurisdiction in pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), which allegedly applies "because there are 100 or more class members; at least one class member is a citizen of a state that is diverse from Defendants'

citizenship; and the matter in controversy exceeds $5 million, exclusive of inters and costs."
Compl. ¶16. Because Toth has waived the right to bring a class action, Toth has failed to plead
any basis for this Court's jurisdiction—nor does any such basis exist.

Supreme Court precedent makes clear that class action waivers are enforceable in
arbitration agreements even where—as with Chapter 93A—state law expressly contemplates class
claims. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (holding FAA preempts
California rule that invalidated certain class action waivers); *see Feeney v. Dell Inc*., 466 Mass.
1001, 1001–02 (2013) ("*Feeney III*"). Such waivers are enforceable even where individual
plaintiffs' claims will be small, or prosecuting them may be costly or complex. *Am. Exp. Co. v.
Italian Colors Rest*., 570 U.S. 228, 238 & n.5 (2013). The Massachusetts Supreme Court has
acknowledged that it is bound by this precedent. *Feeney III*, 466 Mass. at 1002. Accordingly,
courts applying Massachusetts law routinely enforce class-action waivers found in arbitration
agreements. *See, e.g., id*. at 1003; *Bekele v. Lyft, Inc*., 199 F. Supp. 3d 284, 312 (D. Mass. 2016),
*aff'd*, 918 F.3d 181 (1st Cir. 2019); *Christensen v. Barclays Bank Delaware*, 2019 WL 1921710,
at *6 (D. Mass. Apr. 30, 2019); *see also Beck v. Vision Serv. Plan Ins. Co*., 600 F. Supp. 3d 145,
150–51 (D. Mass. 2021).

This Court should dismiss Toth's complaint for lack of subject matter jurisdiction.

### 2.    Plaintiff lacks standing because she does not allege any injury.

Under Article III of the United States Constitution, Toth must allege an actual, concrete
injury that has a nexus to Everlywell's purportedly actionable conduct. *TransUnion LLC v.
Ramirez,* 141 S. Ct. 2190, 2205–08, 2012 (2021) (Article III requires plaintiffs to suffer "concrete
harm" that is not "speculative"). Similarly, to state a Chapter 93A claim, Toth "must 'show "real"
economic damages,' as opposed to some speculative harm." *Shaulis v. Nordstrom*, 865 F.3d 1, 10
(1st Cir. 2017) (citation omitted). Toth has not pleaded any such injury. Instead, Toth merely

alleges that Everlywell sold and advertised a test that would test for IgG reactivity to food, Toth paid for such an IgG test, and she received the IgG test she bought. Toth nevertheless contends as harm that she would not have purchased the test, or would have only paid less, had she known that the test was allegedly "ineffective at identifying adverse food sensitivities" and had she known about the supposed "widespread rejection" of IgG testing. Compl. ¶86. She further claims that she was harmed by providing her personal data, but she does not claim it was collected without her consent or that Everlywell used it improperly: only that, like her payment for the test, she would not have provided that data had she understood what she was buying. *Id.* Under Toth's theory, her data served as additional consideration for her purchase (even though there is no way to take a laboratory test without providing such data), and she purportedly failed to get the "benefit-of-the-bargain" despite receiving exactly what she paid for: the IgG test results that the box said she would receive. *Id.* ¶¶86–87.

Courts have repeatedly rejected Toth's idea of "informed choice" theory of harm—that is, the notion that had a consumer known supposedly concealed information, they would not have purchased a product. For instance, in *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2015 WL 3751422 (D. Mass. June 15, 2015), the plaintiffs alleged the defendant misled consumers into believing that Celexa and Lexapro were clinically effective in treating depression in children, with "[t]he crux of their theory" being that the defendant "deprived consumers of the ability to make an informed decision" about purchasing the drugs "by withholding information about the negative efficacy studies and engaging in an aggressive marketing campaign designed to mislead consumers" about their efficacy. *Id.* at *8. The court found that the plaintiff had failed to allege any cognizable injury because she had suffered no ill effects from the drug and had gotten the benefit of the purchase. *Id.* (dismissing claim and noting "Decisions in other federal courts

evaluating Chapter 93A claims in the pharmaceutical context also suggest that plaintiffs' 'informed choice' theory is not viable under Massachusetts law."). So too here, Toth received the benefit of what she paid for: results of IgG reactivity testing. She suffered none of the ill effects— discussed further below—that she claims a consumer *might* suffer absent information about IgG testing's purported ineffectiveness, and her claim that she would have paid less had she been aware of alleged disagreement in the medical community is exactly the sort of "informed choice" theory that courts have rejected. *See In re Celexa*, 2015 WL 3751422, at *8; *see also Shaulis*, 865 F.3d at 11 ("induced purchase" theory of harm claiming plaintiff would not have purchased a product but for the defendant's misrepresentation failed to any "identifiable" injury); *In re Fruit Juice Products Mktg. & Sales Practices Litig*., 831 F. Supp. 2d 507, 510–12 (D. Mass. 2011) (dismissing for lack of standing where plaintiffs suffered no harm but merely alleged they would not have purchased juice "advertised as safe, but that in fact contained dangerous amounts of lead").

Toth's Complaint makes additional speculative claims about potential harms a consumer could suffer if they ignored Everlywell's robust disclaimers and instructions for use, such as eating foods to which they are allergic or permanently eliminating foods that are safe for them to the point of nutritional deficiency. Compl. ¶¶22–23, 38. Putting aside that no reasonable consumer would believe Everlywell's Food Sensitivity Test diagnoses food allergies (indeed, Everlywell itself advertises and sells a separate Food Allergy Test), *see infra*, p.23, these harms are purely speculative: Toth does not allege that she herself suffered any ill effect from using Everlywell's Food Sensitivity Test. Toth's speculation about harms that other consumers might suffer as a consequence of Everlywell's alleged misrepresentations does not suffice to confer either Article III or statutory standing. *See, e.g., In re Fruit Juice,* 831 F. Supp. 2d at 511.

Finally, Toth lacks standing to seek injunctive relief for the additional reason that any purported misrepresentations by Everlywell do not have the capacity to deceive Toth. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 335 (2006). Harm must not be "speculative," and where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Accordingly, "[a] false advertising plaintiff who does not intend to purchase from the defendant in the future cannot seek injunctive relief." *Cordes v. Boulder Brands USA, Inc*., 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (quoting *Weidenhamer v. Expedia, Inc*., 2015 WL 1292978, at *5 (W.D. Wash. Mar. 23, 2015)). Toth has not pleaded that she is likely to be harmed by Everlywell's labeling for its Food Sensitivity Test in the future, as she has made clear she has no interest in purchasing the product again.

Everlywell's Food Sensitivity Test is an IgG test, and it is clearly labeled as such. *See* Herber Ex. 1, p.2. The crux of Toth's Complaint is her mistaken belief that IgG testing has "no utility whatsoever in predicting adverse food sensitivities." Compl. ¶¶19, 25–41. Given Toth's beliefs about IgG testing, Everlywell's IgG-centric advertising cannot possibly "mislead" Toth into buying an IgG Food Sensitivity Test. Given Toth's own professed disinterest in purchasing an IgG test, she has no standing to seek injunctive relief for any alleged misrepresentations.

### 3.   Plaintiff lacks standing to assert claims under the Consumer Protection Acts of other states.

As the First Circuit has made clear, "[t]he standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012); *see* 1 William B. Rubenstein, Newberg on Class Actions § 2:5 (5th ed. 2012) ("[A]t least one named class representative must have standing with respect to each claim.").

As a threshold matter, Plaintiff lacks standing to bring her individual claims, *see supra* §III(B)(2), and accordingly cannot bring those same claims on behalf of a class. *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974). Furthermore, Toth lacks standing to assert claims under the "Consumer Protection Acts of 48 states" other than Massachusetts: the First Circuit has explained the circumstances under which a plaintiff may allege claims for which she herself lacks standing on behalf of absent class members, and those circumstances are not present here. In *In re Asacol Antitrust Litigation*, 907 F.3d 42 (1st Cir. 2018), the First Circuit held in an antitrust matter that a named plaintiff could assert claims under other states' laws on behalf of absent class members where the claims at issue—state statutes based on federal antitrust law—were so similar as to ensure that the named plaintiff was adequately incentivized to pursue the class members' claims. *Id*. at 50. However, as the court in *Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309 (D. Mass. 2021), *aff'd,* 66 F.4th 348 (1st Cir. 2023), explained, the First Circuit's standing decision in *Asacol* relied on its finding that the state antitrust laws were "'parallel' to each other" because they were all interpreted consistent with federal antitrust law. *Id*. at 323–24. The *Morales* court found that, by contrast, a Massachusetts plaintiff lacked standing to assert consumer protection act claims on behalf of absent class members under Washington and Connecticut law as the plaintiff "made no such allegation of parallelism" between the states' consumer protection laws. *Id*. This case is no different. Toth lacks standing to bring claims under the consumer protection laws of 48 other states, as she does not plead that those states' Consumer Protection Acts parallel one another such that she would be adequately incentivized to pursue claims under those laws.

Nor could Toth do so: "State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re Bridgestone/Firestone*, 288 F.3d 1012, 1018 (7th Cir. 2002). Consequently, courts

routinely decline to certify nationwide classes for consumer protection claims because "variances in the substantive prerequisites of such claims render" class certification "unmanageable and contrary to the fair and efficient adjudication" of the matter. *S. States Police Benev. Ass'n v. First Choice Armor & Equip.*, 241 F.R.D. 85, 93 (D. Mass. 2007); *see In re Bridgestone*, 288 F.3d at 1018. Claims for unjust enrichment likewise "vary materially from state to state." *Mazza v. Am. Honda*, 666 F.3d 581, 591 (9th Cir. 2012). Thus even were she to have standing to assert her claims under the laws of other states, Toth's nationwide class claims are not viable and the Court need not wait to dismiss them. *See Camey v. Force Factor, LLC*, 2016 WL 10998440, at *2 (D. Mass. May 16, 2016) (quoting *Manning v. Bos. Med. Ctr.*, 725 F.3d 34, 59 (1st Cir. 2013) ("[C]aution ... should not deter a court from 'delet[ing]' the complaint's class allegations' when 'it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis.'").

### 4.    Toth's claim for Unjust Enrichment fails because she has an adequate remedy at law.

The Court should dismiss Plaintiff's unjust enrichment claim because she has adequate remedies at law—namely, her Chapter 93A, fraud, and negligent misrepresentation claims. Under Massachusetts law, unjust enrichment is "a theory of equitable recovery, not an independent cause of action." *Flores v. OneWest Bank*, 172 F. Supp. 3d 391, 396 (D. Mass. 2016), *aff'd*, 886 F.3d 160 (1st Cir. 2018). "[A] party with an adequate remedy at law cannot claim unjust enrichment," *Shaulis*, 865 F.3d at 16. It does not matter that her other claims are meritless: "The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment." *Id.* at 16; *see Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("Plaintiff's negligence and chapter 93A claims thus preclude a claim for unjust enrichment. The disposition of those claims is irrelevant. Their mere availability is a bar to a claim of unjust enrichment."). Toth thus cannot save her unjust enrichment claim by asserting that it is an "alternative theory of

relief," Compl. ¶115—the mere existence of a legal remedy precludes her from pleading it. *See, e.g., Tomasella v. Nestle USA, Inc*., 962 F.3d 60, 69 (1st Cir. 2020) (affirming dismissal of precluded unjust enrichment claim). Her conclusory allegation that she lacks an adequate remedy at law does not change the result. Compl. ¶116; *Young v. Wells Fargo Bank, N.A*., 717 F.3d 224, 231 (1st Cir. 2013) (on a motion to dismiss, a court must "disregard conclusory allegations that merely parrot the relevant legal standard").

### 5. Plaintiff's Chapter 93A claims fail because no reasonable consumer could be misled by Everlywell's advertising.

To plead a Chapter 93A deceptive practices claim, a plaintiff must allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Tomasella*, 962 F.3d at 71 (citation omitted). Courts consider "an act or practice deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product)." *Gottlieb v. Amica Mut. Ins. Co*., 57 F.4th 1, 9 (1st Cir. 2022) (alterations and citation omitted). Whether allegations plausibly plead the capacity to deceive relies on "the likely reaction of a reasonable consumer rather than an ignoramus." *DiCroce v. McNeil Nutritionals, LLC*, 2022 WL 16847696, at *3 (D. Mass. Nov. 10, 2022) (citation omitted).

Toth's complaint specifies five alleged misrepresentations and omissions, accusing Everlywell of: (1) "Misrepresenting … that the Test Kit is a 'Food Sensitivity Test,'"; (2) "Misrepresenting that the Test Kit will test 96 [or 206] foods for Immunoglobulin G (IgG) antibody reactivity"; (3) "Misrepresenting that Test Kit has medical acceptance" by including the words "Physician-approved lab test" and referring to "CLIA-Certified Lab Partners" on the packaging; (4) "Omitting" that IgG tests are "incapable of identifying food sensitivities" or other

diagnostic benefits, and (5) "Failing to adequately disclose" its Privacy Policy. Compl. ¶107(b). None of these alleged misrepresentations of omissions could mislead a reasonable consumer.

Everlywell's Food Sensitivity Test explains to consumers exactly what it measures: "IgG reactivity to 96 foods."



Herber Ex. 1, p.2.[4] Toth concedes that "Food Sensitivity" does not have an official definition, and likewise concedes the test measures IgG reactivity—exactly as the box says it does. Compl. ¶2.

Courts have repeatedly held that product names are not misleading where a consumer could read the product packaging to learn the relevant facts about the product. For instance, in *Forschner Group, Inc. v. Arrow Trading Co.*, 30 F.3d 348 (2d Cir. 1994), the Second Circuit held that use of

---

[4] On a Rule 12(b)(6) motion to dismiss, a district court may consider "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (citation omitted). Toth's Complaint both relies upon and incorporates the Food Sensitivity Test packaging, though she omits the portions of the packaging that undermine her claims. *See* Compl. ¶¶53–54.

the phrase "Swiss Army" to label knives manufactured in China did not violate false advertising provisions of the Lanham Act, as the knives were clearly labeled "Made in China." *Id*. at 351–355. Similarly, in *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc*., 653 F.3d 241 (3d Cir. 2011), the Third Circuit held that even if the phrase "Havana Club" on a bottle of rum could suggest the product's origin in Cuba, "those same words cannot mislead a reasonable consumer" presented with an "accurate, unambiguous statement" on the label that the rum is "distilled and crafted in Puerto Rico." *Id*. at 252–253. No reasonable consumer could be misled about what the Food Sensitivity Test measures in light of the accurate, unambiguous statement on the packaging that it measures IgG levels. Toth's allegation that Everlywell "omitt[ed]" that its test cannot identify food "sensitivities" fails for the same reason. *See* Compl. ¶107(b)(iv).

Toth's claim that a reasonable consumer would be deceived into thinking that the Food Sensitivity Test diagnoses food allergies or intolerances further fails because the package expressly disclaims such use. *See* Herber Ex. 1, p.2 & Ex. 2, p.2 (back of test boxes stating test intended for "informational and educational use only" and "is not intended to be used for diagnostic purposes"). Courts "routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct." *DiCroce*, 2022 WL 16847696, at *4 (D. Mass. Nov. 10, 2022) (citing *Bowring v. Sapporo U.S.A., Inc*., 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017)). In *DiCroce*, for instance, the court found that reasonable consumers could not be misled into believing Lactaid was a drug where it expressly stated on the package that it was not, and that it was "not intended to treat any disease." *Id*. at *4. The same is true here: the test packaging states that the test is intended for "informational and educational use only" and "is not intended to be used for diagnostic purposes." Herber Ex. 1, p.2. The box further states, in large, bolded text, "Learn your reactivity to 96 foods that may be causing discomfort."

Nowhere does the packaging suggest that it provides a medical diagnosis—rather, it states that it does not.

Everlywell's website makes the same point explicit: on the page used to purchase a test kit, there is a large explanatory graphic entitled "Understand the difference between food sensitivity, food allergy, and celiac disease testing" as well as an FAQ entitled "Understanding the Difference: Food Sensitivity vs. Food Allergy vs. Food Intolerance."[5] No reasonable consumer could understand Everlywell's marketing as representing food "sensitivity" to mean "allergy" or "intolerance," as Everlywell explains the difference of these terms. Indeed, Everlywell offers separate tests for food allergies and celiac disease (gluten intolerance), underscoring for consumers that its Food Sensitivity Test does not diagnose either of these things.

While Toth alleges that the language "Physician-approved lab test" and "CLIA-Certified Lab Partners" would mislead a consumer into believing the tests have universal acceptance in the medical field, the Test Kit packaging explicitly tells consumers exactly what those phrases refer to: as part of the test process, the consumer will create a sample to "Send to a CLIA-certified lab," and that "A board-certified physician will review your results." Herber Exs. 1–2. Toth's own Complaint cites to the page of Everlywell's website with the heading "The Process and Science Behind EverlyWell's Tests," Compl. ¶61 (citing https://www.everlywell.com/blog/news-and-info/the-process-and-science-behind-everlywelltests/), which states in bolded text, "So you say the tests are physician approved. What does that mean?," following by an explanation of the fact that

---

[5] *See* https://www.everlywell.com/products/food-sensitivity/. Consideration of this material is appropriate on a motion to dismiss because Toth's Complaint repeatedly cites Everlywell's website and the representations there as integral to her claims (*see, e.g.*, Compl. ¶¶57, 61, 64–65, 107(b)). The Court can also take judicial notice of the fact that these statements are publicly available. *See, e.g., Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020) (judicially noticing printouts from publicly available webpage).

"Everlywell works with a network of board-certified physicians" to "obtain independent physician review of customer test requests and results." Toth does not (and could not) allege that Everlywell fails to send samples to a CLIA-certified lab (as stated on the test kit box) or to have board-certified physicians review test requests or results (as also stated on the box, and explained on the webpage cited by Toth). In short, the phrases "Physician-approved lab test" and "CLIA-Certified Lab Partners" are entirely accurate and could not mislead a reasonable consumer.

Finally, with respect to Everlywell's Privacy Policy, no reasonable consumer could be deceived about the existence of that policy because they are required to acknowledge its existence prior to submitting any personal data when they create an account and register their test. The hyperlink to the Privacy Policy is blue and underlined, and appears multiple times in the User Agreement: In the very first paragraph, and then again in a stand-alone paragraph. Ex. A, pp.1, 4. It is also hyperlinked on Everlywell's website. It is simply not possible for a consumer to create an account—and thus provide personal data and submit a test kit—without having expressly acknowledged that they read and accept the terms of the Privacy Policy. *See* Lusenhop ¶5–6.

Toth has not alleged any misrepresentation or omission by Everlywell that could deceive a reasonable consumer. Her claim under M.G.L. ch. 93A must accordingly be dismissed.

### 6. Toth's remaining claims fail because she has not alleged any misleading misrepresentation.

Because Toth fails to allege any misrepresentation by Everlywell, Toth's remaining claims for fraud, negligent misrepresentation, and unjust enrichment must be dismissed.

Toth's fraud claim requires her to plead with particularity that Everlywell "made a false representation of material fact, with knowledge of its falsity, for the purpose of inducing the plaintiff[] to act on this representation, that the plaintiff[] reasonably relied on the representation as true, and that they acted upon it to their damage." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club,*

*Inc.*, 455 Mass. 458, 471 (2009) (citation omitted). Likewise, "[t]he first element of negligent misrepresentation is for the defendant to have made a false statement of material fact." *Bourgeois v. Blue Cross Blue Shield of Mass.*, 531 F. Supp. 3d 407, 417 (D. Mass. 2021). Toth had not pleaded any false statement of material fact, let alone the knowledge of falsity or reasonable reliance (or resulting harm, *see supra*) required for her fraud claim. Finally, as discussed above, "unjust enrichment" is not available to Toth because she has an adequate remedy at law; and even if it were, she has not alleged any inequitable conduct that would permit recovery given her failure to plead any material misrepresentation by Everlywell.

## IV.    CONCLUSION

For these reasons, Everlywell respectfully requests that the Court compel Plaintiff to arbitrate her claims and dismiss this case. Should the Court decline to compel arbitration, this Court should dismiss Plaintiff's Complaint.

Respectfully submitted,                                          Dated: July 3, 2023

*/s/ Katherine M. Peaslee*
Katherine M. Peaslee (*pro hac vice*)                  William F. McGonigle (BBO #569490)
SUSMAN GODFREY L.L.P.                               Arrowood LLP
401 Union Street, Suite 3000                            10 Post Office Square, 7th Floor South
Seattle, WA 98101                                       Boston, MA 02109
Phone: (206) 516-3880                                   (617) 849-6200
Fax: (206) 516-3883                                     wmcgonigle@arrowoodllp.com

Krysta Kauble Pachman, (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
kpachman@susmangodfrey.com

*Attorneys for Defendants*
*Everly Well, Inc. and Everly Health, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Katherine M. Peaslee*