## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOYCE TOTH, an individual, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:23-cv-11043-RGS |
| vs. | ) | |
| | ) | |
| EVERLY WELL, INC. and EVERLY HEALTH, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### AFFIDAVIT OF KATHERINE M. PEASLEE IN SUPPORT OF EVERLYWELL'S MOTION TO COMPEL OR ALTERNATIVELY TO DISMISS PLAINTIFF'S COMPLAINT

I, Katherine M. Peaslee, being under oath do hereby depose and say as follows:

1.     I am an attorney at Susman Godfrey, LLP, and counsel of record for Defendants Everly Health, Inc. and Everly Well, Inc. If called as a witness, I could and would competently testify thereto.

2.     Attached as **Exhibit F** is a true and correct copy of Order Granting Defendant's Motion to Compel Arbitration, *Robinson v. Everly Well, Inc*., Case No. 2020-014253-CA-01 (Fla. Cir. Ct. Miami-Dade Cty. Jan. 9, 2021).

3.     Attached as **Exhibit G** is a true and correct copy (with highlighting added) of a printout from the web archived version of Target's webpage selling Everlywell's Food Sensitivity Test showing Target's return policy as of October 2022, which I printed from https://web.archive.org/web/20221012223904/https://www.target.com/p/everlywell-food-sensitivity-test/-/A-76157573 using Adobe's print to PDF function on July 2, 2023.

I declare under penalty of perjury that the foregoing is true and accurate.

Signed under the penalty of perjury this 3rd day of July, 2023.

# Exhibit F

Filing # 119345493 E-Filed 01/09/2021 07:29:19 PM

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2020-014253-CA-01</u>
SECTION: <u>CA43</u>
JUDGE: <u>Michael Hanzman</u>

**ZELEEN ROBINSON**

Plaintiff(s)

vs.

**EVERLY WELL, INC.**

Defendant(s)

_____/

## <u>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>

THIS CAUSE came before the Court upon Defendant Everly Well, Inc.'s ("Everlywell") Motion to Compel Arbitration ("the Motion") filed August 25, 2020. The Motion was fully briefed, as Zeleen Robinson ("Robinson") filed her opposition on September 14, 2020, Everlywell filed its reply on September 25, 2020 and, with the Court's permission, Robinson filed a sur-reply on October 9, 2020. The Court has considered the Motion, the parties' briefing, the record, and argument of counsel at a specially-set hearing held on October 26, 2020. For the reasons set forth below, the Court hereby GRANTS the Motion and STAYS the case.

### RELEVANT BACKGROUND

#### A. **Nature of the Action**

This lawsuit was brought by Robinson, a Miami resident, against Everlywell, a Delaware corporation with its principal place of business in Austin, Texas. Compl. ¶¶ 14-15. Robinson, who alleges she purchased an Everlywell Food Sensitivity Test from a Target store in Miami-Dade County in March 2020, claims that Everlywell engaged in deceptive and unfair marketing practices and false advertising in connection with the marketing and sale of its Food Sensitivity Test. Robinson asserts claims under the Florida Deceptive and Unfair Trade Practices Act, Fla.

Stat. § 501.201, *et seq.* (FDUTPA) (Counts I-III), the Florida Misleading Advertising Law, Fla. Stat. § 817.41, *et seq.* (Count IV), and for unjust enrichment (Count V). Robinson purports to bring her action on behalf of "all Florida citizens who purchased an Everly Well Food Sensitivity Test for personal, family, or household use in the State of Florida." *Id.* ¶ 92.

### B. The Nature of the Test

Everlywell's Food Sensitivity Test is a blood testing kit which uses Immunoglobulin (IgG) Analysis purportedly to identify adverse sensitivities to various foods to help guide the test-taker choose what types of food may be the best for an elimination diet. Customers can purchase Everlywell test kits, like the Food Sensitivity Test, from the Everlywell website, Amazon.com, or a small group of retail chains.

When a consumer purchases a Food Sensitivity Test, the consumer receives a kit containing an alcohol prep pad, a collection card, two lancets, a biohazard bag, a bandage, a gauze pad, a return envelope, a return label, and instructions. The consumer uses the materials to collect a blood sample, which the consumer then mails to an Everlywell-associated lab for analysis. The consumer must register the test kit on Everlywell's website before they can submit a test sample or review test results.

### C. The User Agreement

Consumers who purchase a test kit on the Everlywell website must acknowledge before placing their order that "I agree to Everlywell's Terms and Conditions." Consumers, like Plaintiff, who purchase a test kit from a retail chain like Target or from Amazon.com must subsequently register their testing kit online and create an account, which requires them to check a box that "I have read and accept the Terms and Conditions." In both cases, the text "Terms and Conditions" is hyperlinked so that when customers click on the blue hyperlink a *User Agreement* opens in a separate tab.

Section 20 of the *User Agreement* is entitled *Dispute Resolution*, reads as follows:

In the event of any dispute, claim, question or disagreement arising from or relating to this Agreement, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If the parties do not reach such solution within a period of thirty (30) days, then ***all disputes shall be resolved by binding arbitration in Austin, Texas,*** in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"), subject to the limitations of this section. This agreement to arbitrate will be specifically enforceable under the prevailing law of any court having jurisdiction. Notice of a demand for arbitration shall be filed in writing with the other party hereto and with the AAA. The demand for arbitration shall be made within a reasonable time after the dispute has arisen, and in no event shall any such demand be made after the date when institution of legal or equitable proceedings based on such dispute would be barred by the applicable statute of limitations. The parties agree that one (1) arbitrator shall arbitrate the dispute. The arbitrator shall be selected by the joint agreement of the parties, but if they do not so agree within twenty (20) days after the date of the notice of a demand for arbitration referred to above, the selection shall be made pursuant to the Commercial Arbitration Rules of the AAA from the panels of business arbitrators maintained by the AAA. The decision of the arbitrator shall be made in writing, shall be final, judgment may be entered upon it in any court having jurisdiction thereof, and the decision shall not be subject to vacation, modification or appeal, except to the extent permitted by sections 10 and 11 of the Federal Arbitration Act, the terms of which sections the parties agree shall apply. The expenses of arbitration, including reasonable attorneys' fees and the fees and expenses of the arbitrator, shall be shared equally by the parties. (emphasis added)

The parties agree that Robinson registered her Food Sensitivity Test on March 26, 2020, and that she affirmatively clicked the box next to the phrase "I have read and accept the Terms and Conditions," which contained the *Dispute Resolution* provision discussed above.[1]

## DISCUSSION

"Where a motion to compel arbitration has been filed and the arbitration agreement is

valid on its face, it is the burden of the party seeking to avoid arbitration to demonstrate that the agreement is invalid." *Spring Lake NC, LLC v. Figueroa*, 104 So. 3d 1211, 1214 (Fla. 2d DCA 2012); *see also Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 100 (Fla. 3d DCA 2017) (citing *Spring Lake*); *Geter v. Galardi S. Enterprises, Inc.*, No. 14-21896-CIV, 2015 WL 1268276, at *1-2 (S.D. Fla. Mar. 19, 2015) ("The party opposing a motion to compel arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.") (citation omitted); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (because of the "presumption in favor of arbitration," "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.")

The Federal Arbitration Act ("FAA") requires courts to enforce written arbitration agreements and to compel arbitration of disputes subject to such agreements. The FAA provides, in relevant part, that a written arbitration agreement arising from a contract "evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" 9 U.S.C. § 2. The term "involving commerce" is to be read as broadly as possible, such that an arbitration agreement which affects commerce in any way is governed by the FAA. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-81 (1995). The FAA governs here because the arbitration agreement involves interstate commerce between Robinson, a Florida citizen, and Everlywell, a Delaware corporation with its principle place of business in Texas. *See Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 445 (Fla. 3d DCA 2008) (finding that an arbitration agreement was governed by the FAA because "interstate commerce was involved, whether or not it was contemplated by the parties at the time of entering into the Agreement").

Florida courts have recognized that there is "a body of federal substantive law of arbitrability [] applicable to any arbitration agreement within the coverage of the Act." *Jensen v.*

*Rice*, 809 So. 2d 895, 898-99 (Fla. 3d DCA 2002). The FAA, "enacted pursuant to the commerce clause of the United States Constitution, supersedes inconsistent state law." *Id.* "Florida courts must enforce arbitration agreements that are valid and enforceable under the Federal Arbitration Act, even where [] the arbitration agreement would not be enforceable under [state] law." *Id.* That is not an issue here because there is no conflict between applicable state law and the federal substantive law of arbitrability, nor is there any conflict in the law nationwide that "clickwrap" arbitration agreements like the one at issue here are enforceable. Since no conflict exists, the court need not undertake a complete choice-of-law analysis. *See Tune v. Philip Morris, Inc.*, 766 So. 2d 350 (Fla. 2d DCA 2000).

A. Delegation of Arbitrability Analysis

The Court's first task is to determine whether a written agreement to arbitrate was entered into by the parties. That threshold issue is for the Court to adjudicate. *See, e.g., Careplus Health Plans, Inc. v. Interamerican Med. Ctr. Group, LLC,* 124 So. 3d 968 (Fla. 3d DCA 2013) (question of whether arbitration clause contained in parties' 2010 Agreement governed – and required arbitration of a dispute arising out of an alleged breach of 2004 Agreement – was properly decided by the court); *Lumsden v Origis Energy SA, Inc.*, 26 Fla. L. Weekly Supp 278b ( Fla 11th cir Ct.,m May 31, 2018) (Hanzman, J) ( issue of whether a contract requiring arbitration exists *vel non* is always one for the court to decide).

The Court finds that such an agreement exists here, as Plaintiff has acknowledged that she did indeed check the "I have read and accept the Terms and Conditions" box.[2] The Court finds, and Robinson does not dispute, that the arbitration provision and class action waiver are supported by consideration. *See* Plaintiff's Sur-Reply Memorandum In Opposition To Defendant's Motion To Compel Arbitration, at 4 ("[W]hether the arbitration provision was unenforceable due to a lack of additional consideration … [] is not in dispute here.").

There is no dispute Robinson entered into to a contract with Everlywell when she

registered her testing kit online and clicked the box manifesting her assent to the User Agreement. Robinson however contends her claims are not arbitrable because (1) they are outside the scope of the agreement and its arbitration clause and (2) the arbitration clause is procedurally and substantively unconscionable. Before reaching these issues, the Court must first decide whether these questions of arbitrability are for the arbitrator or the Court to decide.[3]

"While arbitrability is generally an issue for trial courts to decide, courts must delegate the authority to the arbitrator if the parties' contract so provides." *Reunion W. Dev. Partners, LLLP v. Guimares*, 221 So. 3d 1278, 1280 (Fla. 5th DCA 2017). While arbitrability is generally an issue for a trial court to decide, "courts are required to enforce privately negotiated agreements to arbitrate." *Glasswall, LLC v. Monadnock Const., Inc.*, 187 So. 3d 248, 251 (Fla. 3d DCA 2016). There must be "clear and unmistakable evidence" that the parties intended to delegate questions regarding the validity and scope of the arbitration agreement to the arbitrator. *Rintin Corp., S.A. v. Domar, Ltd.*, 766 So. 2d 407, 408 (Fla 3d DCA 2000) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In *Glasswall*, a window manufacturer brought an action against a general contractor challenging the propriety of an arbitration proceeding and moved for a temporary injunction to stay arbitration. *Id*. at 252. The court held that, even though there was no language in the dispute resolution agreement specifically delegating the issue, "by incorporating the Construction Industry Rules of the AAA which make the issue of arbitrability subject to arbitration," there was "'clear and unmistakable' evidence of [the parties] intent to submit the issue of arbitrability to an arbitrator." *Id*. The court noted "that the parties are in agreement that the majority of federal courts considering similar circumstances where the AAA's arbitration rules have been incorporated by reference into a contract likewise have found that the parties sufficiently evidenced their intent to have arbitrators, not a court, hear and decide issues of arbitrability," and "decline[d] [plaintiff's] invitation to side with those few courts which have found otherwise." *Id*. (citing cases).4

The arbitration provision here provides that "any dispute, claim, question, or disagreement arising from or relating to this Agreement" is subject to a 30-day good faith negotiation requirement and, failing that, "all disputes shall be resolved by binding arbitration" in accordance with the AAA Commercial Arbitration Rules:

> In the event of any dispute, claim, question or disagreement arising from or relating to this Agreement, the parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the parties shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If the parties do not reach such solution within a period of thirty (30) days, then all disputes shall be resolved **by binding arbitration in Austin, Texas, in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA")**, subject to the limitations of this section. (emphasis added)

Thus, the arbitration agreement incorporates the AAA Commercial Rules, which contain a provision equivalent to the one found in the Construction Rules that the Third District considered in *Glasswall*. They state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* American Arbitration Association, *Commercial Arbitration Rules & Mediation Procedures* R-7(a) (2013) ([https://www.adr.org/rules](https://www.adr.org/rules)).

In accordance with *Glasswall*, this Court is compelled to conclude that the agreement's incorporation of the AAA Commercial Arbitration Rules constitutes "clear and unmistakable evidence" of the parties' intent to delegate questions regarding arbitrability to the arbitrator. While the Second District Court of Appeal, in *Doe v. Natt*, 299 So. 3d 599, 608 (Fla. 2d DCA 2020), recently concluded that incorporation of the AAA Rules did not amount to clear and unmistakable evidence that parties intended to delegate the issue of arbitrability to the arbitrator,

this Court is bound to follow the Third District's decision in *Glasswall*. [5]

B. This Case Is Stayed Pending the Conclusion of Arbitration.

When a party to a written arbitration agreement attempts to prosecute a civil action that is subject to arbitration, the FAA provides that the action shall be stayed pending resolution of the arbitration proceedings. *See* 9 U.S.C. § 3 ("[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…."); *see also* Fla. Stat. § 682.03(7) ("If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration."); *Gomez v. S & I Properties, LLC*, 220 So. 3d 539, 542 (Fla. 3d DCA 2017). This case is stayed pending the resolution of such arbitration. If the arbitrator determines that the claims are not arbitrable in accordance with Rule 7 of the AAA Commercial Arbitration Rules, the Court retains jurisdiction to adjudicate the claims.

## CONCLUSION

For the reasons set forth above, it is **ORDERED and ADJUDGED**:

1.     Defendant Everly Well Inc.'s Motion to Compel Arbitration is **GRANTED**;

2.     This case is **STAYED** pending resolution of the arbitration.

---

[1] The Terms and Conditions to which Plaintiff agreed also include, in Section 23(a), a class action waiver which provides, in relevant part, that: "Any proceedings to resolve or litigate any dispute in any forum will be conducted solely on an individual basis. Neither you nor we will seek to have any dispute heard as a class action or in any other proceeding in which either party acts or proposes to act in a representative capacity."

[2]     The arbitration agreement between Robinson and Everlywell involves what is referred to in case law as a "clickwrap" agreement. "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018).

[3]   Plaintiff also claims that "because Plaintiff's claims are not subject to arbitration ..., and because the enforceability of the class action waiver is wholly derivative of the parties' arbitration dispute, the class action waiver is without effect." Plaintiff's Memorandum in Opposition to Defendant's Motion to Compel Arbitration at 1 n.1. Any defense to the applicability or scope of the class action waiver can be addressed by the arbitrator as required by *Glasswall.*

[4]   *See, e.g., Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1290 (10th Cir. 2017); *Oracle Am,. Inc. v. Myriad Grp, A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Petrofac, Inc, v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Terminix Int'l Co. v. Palmer Ranch Ltd. Partnership,* 432 F.3d 1327, 1332 (11th Cir. 2005) 1332; *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Apollo Computer. Inc, v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989).

[5]   Robinson contends that the agreement is procedurally and substantively unconscionable. Because unconscionability is a defense that does not go to contract formation, this Court declines to decide that issue, leaving it for the arbitrator. Robinson also contends that she is being retroactively bound to the agreement. That issue, and other potential issues regarding arbitrability and the applicability of the class action waiver, similarly, belong to the arbitrator.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 9th day of January, 2021.

<u>2020-014253-CA-01 01-09-2021 7:17 PM</u>
Hon. Michael Hanzman

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Benjamin J. Widlanski, bwidlanski@kttlaw.com
Benjamin J. Widlanski, sf@kttlaw.com
Cbl Section 43 Case Mgr, cbl43@jud11.flcourts.org
Gillian L. Wade, gwade@mjfwlaw.com
Jay B. Shapiro, jshapiro@stearnsweaver.com
Jay B. Shapiro, mperez@stearnsweaver.com

Joshua A Munn, jmunn@stearnsweaver.com
Joshua A Munn, wsolomon@stearnsweaver.com
Robert Neary, rn@kttlaw.com
Robert Neary, pm@kttlaw.com
Ryan Casey, ryan@rcaseylaw.com
Sara Avila, savila@mjfwlaw.com
Veronica De Zayas, vdezayas@stearnsweaver.com
Veronica De Zayas, valfonso@stearnsweaver.com


**Physically Served:**

Exhibit G

The Wayback Machine - https://web.archive.org/web/20221012223904/https://www.target.com/p/everl…
Black-owned or founded brands at TargetReady for SchoolCollegeGroceryClothingBabyHomeFurnitureKitchen & DiningPatio & GardenToysElectronicsVideo GamesMoviesSports & OutdoorsBeautyPersonal CareHealthPetsHousehold EssentialsArtsSchool & Office SuppliesParty Supplies HalloweenGift IdeasLuggageGift CardsTop DealsTarget Circle OffersWeekly AdClearanceExplore What&pos;s New#TargetStyleWomen's New ArrivalsBeauty New ArrivalsKids' New ArrivalsBaby New ArrivalsMen's New ArrivalsHome New ArrivalsTarget FindsLiveOrder PickupSame Day Delivery

  

Search

Target / Health / Home Health Care / Home Tests & Monitors

Shop all EverlyWell

# EverlyWell Food Sensitivity Test



$159.99When purchased onlineIn StockAdd to cart

# About this item

## At a glance



**HSA/FSA Eligible**

## Highlights

Show more

## Shipping details

Estimated ship dimensions: 8.1 inches length x 4.6 inches width x 1.9 inches height
Estimated ship weight: 0.34 pounds
This item cannot be shipped to the following locations: New York, Maryland, New Jersey, Rhode Island

## Return details

This item can be returned to any Target store or Target.com.
This item must be returned within 90 days of the date it was purchased in store, shipped, delivered by a Shipt shopper, or made ready for pickup. If purchased online with SNAP EBT, this item must be returned within 90 days of the date it was shipped, delivered by a Shipt shopper, or made ready for pickup. This 90-day return window is required by SNAP.
See the return policy for complete information.

**Q: Does this kit test IGE (ALLERGY) or IGG (Food Exposure)? IGG kits test positive for all foods you've eaten before. I want to make sure I'm testing IGE antibodies, since that's the only test that tells you if you're having an inflammatory reaction.**
nothanks - 3 years ago

**A:** According to the website, it tests IGG.
luckybubbles - 2 years ago   Helpful (27)   Not helpful (0)   Report

Answer it

**Q: Where can I find a list of the 96 food sensitivities the kit tests for?**

sunnymom - 3 years ago

**A:** https://www.everlywell.com/products/food-sensitivity/ Scroll down to the What's Measured button and select All Foods. It's also on the back of the box if you are in the store.

fobofobiac - 3 years ago   <u>Helpful (19)</u>   <u>Not helpful (8)</u>   <u>Report</u>

Answer it

See all questions (2)

Ask a question

## More to consider







FlowFlex Covid-19 Antigen Home Test - 1ct

**$7.99**
FlowFlex Covid-19…

**$49.99**
EverlyWell Testosteron…

**$31.99**
ellume COVID-19 Rapi…

**$102.00**
EverlyWell COVID

## Similar items









**$99.99**
EverlyWell Thyroid Test…

**$49.99**
EverlyWell Testosteron…

**$49.99**
EverlyWell Colon Canc…

**$102.00**
EverlyWell COVID